JAX ICE & COLD STORAGE COMPANY; D. W. STEVENSON; MARIAN N. O'BRIEN; TREADWELL AND TREADWELL; E. J. L'ENGLE; SECURITY STATE BANK OF FORT OGDEN; WILSON & TOOMER FERTILIZER COMPANY; H. C. SCHRADER & COMPANY; JONES PACKING COMPANY; H. L. DAVIS; AND E. W. SNEAD AS RECEIVER OF FIRST BANK OF MOORE HAVEN, *Appellants*, v. SOUTH FLORIDA FARMS COMPANY, *Appellee*.

Division A.

Opinion Filed April 8, 1926.

Petition for rehearing denied May 11, 1926.

594

*George M. Powell,* for Appellants;

*E. J. L'Engle; Treadwell & Treadwell; J. W. Shands; Mabry, Reaves & Carlton; Knight, Thompson & Turner; Leitner & Leitner* and *H. G. Jones,* for Appellee.

ELLIS, J.—This is an interpleader suit. The bill was exhibited by the appellee in the Circuit Court for De Soto County on September 23, 1922. The defendants named were D. W. Stevenson; Marian N. O'Brien; Treadwell and Treadwell; Jax Ice and Cold Storage Company and the Security State Bank of Fort Ogden.

The bill rests upon the following facts: During the early part of the year 1921 D. W. Stevenson recovered a judgment against the complainant in the sum of $61,884.03, but upon writ of error from the Supreme Court the judgment was affirmed August 16, 1922, on condition that a remittitur should be entered reducing the judgment to $24,985.28 and that it stands of record for that amount and interest. D. W. Stevenson, on February 23, 1921, assigned the judgment to Marian N. O'Brien and afterwards on July 7, 1921, to Treadwell and Treadwell. Early in the year 1921 the Jax Ice and Cold Storage Company garnisheed the complainant in an action by that company against D. W. Stevenson, which was pending in Duval County, Florida, and afterwards The Security State Bank of Fort Ogden, on September 19, 1922, garnisheed the complainant in an action by that Bank against D. W. Stevenson pending in DeSoto County. The complainant alleges that it is unable to decide to whom the money due upon said judgment should be paid and that all the defendants claim it.

That it has no beneficial interest in the money due and that it is ready to pay the judgment but it cannot determine without hazard to itself to whom of right it belongs.

The bill prays that the defendants be restrained from "suing out executions or harassing" the complainant in any manner. That the court will determine to whom the money due upon the judgment belongs; that the defendants be required to "answer" and that the complainant be allowed its reasonable costs and attorney's fees in the matter expended and for general relief.

On October 19, 1922, the Chancellor ordered to be issued an injunction against the defendants enjoining them from issuing executions upon the judgment or proceedings in the garnishments. It was ordered that the complainant deposit the money in the registry of the court within ten days, upon doing which it should be discharged from the "judgment," and that the money should be paid out only upon vouchers signed by the clerk and countersigned by the judge. The injunction was issued pursuant to such order.

On November 6, 1922, The Security State Bank of Fort Ogden answered averring that the defendant, Stevenson, owed it $15,000.00 and that it "garnisheed the moneys" in the hands of the complainant immediately upon the "rendition and affirming of the said judgment" for the sum of $24,985.28. The evidence shows that the Bank obtained a judgment against Stevenson on December 8, 1922, in the sum of $15,635.60 and that a writ of garnishment was duly issued in that cause naming the complainant as garnishee on September 19, 1922. The answer averred that the Bank's claim was superior to that of all other defendants. It averred that Stevenson owed nothing to Marian O'Brien, that Treadwell and Treadwell had never attached the moneys and that the garnishment by the Jax Ice Company was void because the writ of garnishment issued from the Circuit Court of Duval County in an action pending

there and that when the writ issued the complainant owed
Stevenson nothing.

The garnishment in behalf of the Jax Ice Company was
issued May 28, 1921, a little more than three months after
the judgment was obtained by Stevenson against the com-
plainant. The judgment against Stevenson in favor of the
Ice Company was for $7729.11 and was obtained May 3,
1921.

On November 6, 1922, D. W. Stevenson answered admit-
ting the assignment of his judgment against the complain-
ant as alleged in its bill of complaint. The bill alleged that
the defendant, Stevenson, "attempted to assign" the judg-
ment to Mrs. O'Brien and Treadwell and Treadwell.

On the same day Treadwell and Treadwell answered the
bill, admitting the assignment of the judgment as alleged
in the bill and averring their interest in the "judgment
and the proceeds thereof" by reason of their lien securing
to them payment for their services as attorneys for Steven-
son in procuring the judgment. On April 3, 1923, Tread-
well and Treadwell amended their answer by averring that
their lien upon the judgment rested upon an agreement
with Stevenson, "prior to the institution of suit which
resulted in said judgment, that he (Stevenson) would pay
unto these defendants the said sum of 25 per cent. of any
amount recovered and such additional sum as might be
necessary to enable these defendants to employ associate
counsel in the Supreme Court of Florida in said cause."

That averment was supported by the testimony of Mr.
Stevenson, who said that he agreed with Mr. Treadwell "on
a basis of twenty-five per cent. of the amount recovered
plus any amount that might be occasioned by hiring any
associate counsel and expenses." It was also supported by
the testimony of Mr. E. D. Treadwell, a member of the firm
of Treadwell and Treadwell, who, replying to a question
propounded by the solicitor for the State Bank of Fort

Ogden whether Mr. Stevenson had not furnished considerable money to apply on attorneys' fees, said ''Not a cent, Judge. As a matter of fact our firm paid the costs of filing papers. Mr. Stevenson never contributed a cent, stated he was not in financial condition. Paid my own expenses to Tallahassee and several trips to Jacksonville to confer with Mr. L'Engle.''

On December 4, 1922, Marian O'Brien answered the bill admitting the assignments of the judgment as alleged in the bill of complaint. The answer averred that the assignment to her of the judgment was for the purpose of securing first an indebtedness due to her by Stevenson amounting to about $6,128.00 and to the First Bank of Moore Haven, to which Stevenson had become indebted in the sum of $18,497.05 and interest.

During the taking of testimony the receiver for the First Bank of Moore Haven was permitted to intervene and in behalf of that bank filed an answer on April 3, 1923, averring the Stevenson indebtedness to the bank to be $10,117.71.

The assignment of the judgment by Stevenson to Mrs. O'Brien is as follows

''STATE OF FLORIDA, COUNTY OF DE SOTO—ss.

KNOW ALL MEN BY THESE PRESENTS, That I, D. W. Stevenson, of the County of DeSoto and State of Florida, in consideration of the sum of Five Dollars ($5.00) and other valuable considerations to me paid, the receipt whereof is hereby acknowledged, do hereby assign, transfer and convey unto Marian N. O'Brien a certain judgment recovered by me in the Circuit Court of DeSoto County Florida, against South Florida Farms Company, on the 4th day of Feby. A. D. 1921, for Sixty-one Thousand Eight Hundred Forty-four & 03/100 Dollars and —— Dollars costs, said judgment being recorded in Book 10, C. C. M., page 90, of the public records of DeSoto County, Florida;

and I hereby authorize and empower the said Marian N. O'Brien, the assignee, to sue on, collect and recover the full amount of said judgment, and take such action or proceedings thereon as he may see fit or expedient; hereby giving and granting unto the said assignee all right, title or interest which I have in and to said judgment; and the Clerk of the Circuit Court of DeSoto County, Florida, is hereby requested and authorized to record this instrument, to the end that said judgment may be properly assigned, transferred and conveyed to the said Marian N. O'Brien, his heirs and assigns.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal this 23rd day of Feby. A. D. 1921.

"Executed in the presence of:

Olga Polk            D. W. Stevenson (Seal)

H. D. Stewart.

"STATE OF FLORIDA,

COUNTY OF DE SOTO.—ss.

PERSONALLY APPEARED BEFORE ME, the undersigned authority, this 23rd day of Feby. A. D. 1921, D. W. Stevenson to me well known and known to be the person mentioned in and who executed the foregoing instrument, and acknowledged the execution thereof to be his free act and deed, for the uses and purposes therein expressed.

"WITNESS my hand and official seal this the date aforesaid.

(SEAL)            OLGA POLK,

Notary Public in and for State at Large.

"My commission expires April 7, 1921.

"The original filed and recorded March 15th, 1921.

A. L. DURRANCE, Clerk Ct. Ct.

By Kate Carlton, D. C.''

On April 3, 1923, the Security State Bank of Fort Ogden amended its answer in which it averred that it held three

judgments against Stevenson; one obtained in June, 1916, for $271.54; one obtained in December, 1919, for $1919.91, and the other in December, 1922, for $15,635.60, and that pending the action in which the last judgment was obtained it procured the writ of garnishment mentioned. The answer denied that Stevenson owed Mrs. O'Brien any money at the time of the assignment of the judgment to her, and that it was given to her for the purpose of hindering and delaying his creditors in the collection of their claims. It questioned the validity of the garnishment issued in behalf of the Jax Ice and Cold Storage Company and averred that the lien of Treadwell and Treadwell upon the proceeds of the judgment for a reasonable fee was valid.

On December 4, 1922, the Jax Ice and Cold Storage Company interposed a demurrer to the bill; the substance of which was that no sufficient reason nor ground existed, according to the allegations of the bill, for an interpleader suit nor for the relief prayed by the complainant.

The demurrer was overruled on January 11, 1923.

On March 13, 1923, the Chancellor made an order permitting other creditors of D. W. Stevenson to become parties and file their answers. They each claimed the money due on the judgment obtained by Stevenson because of his indebtedness to them. Jones Packing Company had obtained a judgment in August, 1916, for $248.96; H. C. Schrader Company obtained judgment in May, 1917, for $981.96; Wilson & Toomer Fertilizer Company obtained judgment in April, 1921, for $2,109.16 and H. L. Davis obtained judgment in May, 1921, for $1,000.00.

The petition of E. J. L'Engle to be made a party was granted and his answer was filed on April 3, 1923. It was averred that in November, 1921, he was engaged by D. W. Stevenson with the consent of Mrs. O'Brien to represent Stevenson as one of his attorneys at law in the proceedings before the Supreme Court in the matter of Stevenson

against the complainant; that for such services Stevenson paid the petitioner $500.00 and agreed to pay the "further sum of Two Thousand Dollars ($2000.00) from the moneys recovered under said judgment if said judgment should be affirmed." It was averred that the services were performed; that the judgment was affirmed on condition that a remittitur should be entered reducing the judgment from $61,884.03 to $24,985.28 and that the defendant, Stevenson, had not paid the agreed further sum of two thousand dollars. It is averred that he has a lien upon the judgment for the amount due to him under the agreement.

The assignment of the judgment by D. W. Stevenson to Treadwell and Treadwell was dated July 27, 1921, and is as follows:

"No. 43831

"D. W. STEVENSON
   TO
"JOHN H. TREADWELL

"KNOW ALL MEN BY THESE PRESENTS: That D. W. Stevenson, of the County of Glades and State of Florida, party of the first part, for and in consideration of the sum of One Dollar and other valuable considerations to him in hand paid by John H. Treadwell and E. D. Treadwell, co-partners, doing business as Treadwell & Treadwell, of the County of DeSoto and State of Florida, parties of the second part, does grant, bargain, sell, set over, assign and deliver, and by these presents has granted, bargained, set over, assigned and delivered unto the said parties of the second part, their heirs and assigns every right, title or interest of every nature or kind whatsoever, whether legal or equitable of the said party of the first part and to that certain judgment recovered by party of the first part on the 4 day of February, A. D. 1921, in the Circuit Court, of the Twelfth Judicial Circuit in and for DeSoto County, Florida, in the sum of $61884.03, said judgment being recorded

in Circuit Court Minute Book 10, page 91 of the records of of DeSoto County, Florida.

"It is understood and agreed between the parties hereto that this assignment is made subject to one heretofore made to Marian N. O'Brien to secure the said Marian N. O'Brien and the First Bank of Moore Haven, for moneys due by party of the first part to the said Marian N. O'Brien, and the said First Bank of Moore Haven, and the said parties of the second part are hereby authorized to make demand upon the said Marian N. O'Brien for the proceeds of said judgment when collected, less the amount due by party of the first part, to the said Marian N. O'Brien and the First Bank of Moore Haven as aforesaid.

. "And the party of the first part hereby authorizes and requests the said Marian N. O'Brien to pay over to said parties of the second part such moneys that may remain in her hands as the proceeds of said judgment after deducting as aforesaid the moneys due her and the said First Bank of Moore Haven, by party of the first part.

"IN WITNESS WHEREOF the said party of the first part has hereunto set his hand and affixed his seal on this the 27th day of July, A. D. 1921.

"Signed, sealed and delivered in the presence of:

Lucy G. Ward                    D. W. Stevenson (Seal)
L. J. Robbins.

"STATE OF FLORIDA,
COUNTY OF DE SOTO:

"Before me, the undersigned authority, an officer duly authorized to administer oaths, personally appeared D. W. Stevenson to be known to be the person described in and who executed the above and foregoing instrument and acknowledged before me that he executed the above and foregoing instrument as his own free act and deed for the uses and purposes therein set forth.

"Witness my hand and official seal at Arcadia, DeSoto County, Florida, on this 27th day of July, A. D. 1921.

LUCY G. WARD, Notary Public..

(Seal) My commission expires 9/11/24.

"The original filed and recorded this Oct. 26th, 1921.

A. L. DURRANCE, Clerk."

On February 5, 1923, the Jax Ice and Cold Storage Company filed its answer. It denied the assignment of the judgment to Mrs. O'Brien and to TREADWELL and TREADWELL; averred the garnishment proceedings against the complainant in an action of the Jax Ice and Cold Storage Company against D. W. Stevenson in which the judgment for $7,729.11 was obtained in May, 1921; that the South Florida Farms Company refused and failed to answer the writ truthfully in that it "denied that said complainant was indebted to the said D. W. Stevenson in any sum whatever and otherwise." The answer averred collusion and conspiracy between the complainant and Stevenson and other persons to prevent the collection of the judgment against Stevenson obtained by the Jax Ice and Cold Storage Company. It denied that the complainant could not determine without hazard to itself to which of the defendants the "said money of right belongs."

Testimony was taken and on the 10th day of May, 1923, the Chancellor made and entered a final decree in which he set out certain findings of fact in substance as follows: First, D. W. Stevenson recovered a judgment against the South Florida Farms Company, February 4, 1921, for $61,884.03, which was affirmed by the Supreme Court on condition that a remittitur of $36,898.75 should be entered which was done and the judgment stood for $24,985.25 and that "immediately thereafter in satisfaction of said judgment" the South Florida Farms Company paid into the registry of this court the amount of the judgment with

interest in the sum of $28,399.94, which sum less the sum of $114.84, which was the amount of the costs in the appellate proceedings, ''leaving a balance in the registry of the court of $28,285.10 shall form the basis of this interpleader.''

The facts, as disclosed by the record and the evidence, were that the judgment was affirmed on the 16th day of August, 1922, and the mandate was issued by this Court September 16, 1922. On the 19th day of September, 1922, the Security Bank of Fort Ogden obtained and caused to be served upon the South Florida Farms Company a writ of garnishment in an action pending in DeSoto County by the Bank against Stevenson in which the Bank recovered a judgment against him in the sum of $15,635.60 on December 8, 1922. That on the 23rd day of September, 1922, the South Florida Farms Company exhibited its bill in this case in which it was alleged that it was ''anxious, able and ready to pay the money as the court may direct and it is ready and willing and hereby offers to bring the amount of the said judgment into court to abide the order of this court.'' That the court made an order on October 19, 1922, requiring the South Florida Farms Company to deposit in the registry of the court within ten days the amount of the judgment with interest and that upon the receipt of the sum into the registry of the court the Company should be discharged from the judgment.

It is apparent, therefore, that the money was paid into the registry of the court some time after the date of the court's order in this cause and pursuant to its provisions and about two months after the judgment was affirmed and about a month after the garnishment which was served upon the Company in the case of the Security Bank of Fort Ogden against the judgment creditor, D. W. Stevenson.

Second, in paragraph numbered two of the decree reference is made to an order made by the court on April 3,

1923, to the effect that the costs of the complainant should be paid, amounting to $2,022.10 and the court found that the amount had been "deducted from the amount which forms the basis of this interpleader and all other necessary costs since that time to-wit: the costs of the court, the costs of reporter for taking testimony shall be paid out of the said amount which sum is here computed at $249.97 both costs which have been paid and which are to be paid amount to $2,272.07."

The order to which reference was made, dated April 3, 1922, is not in the record as certified to this court. The testimony was taken before the court upon an order made February 20, 1923, setting the cause down to be heard at chambers on March 15, 1923. Between that date and that on which the taking of testimony was begun there were some amendments to the pleadings. Treadwell and Treadwell and the Security Bank of Fort Ogden filed amended answers. E. J. L'Engle was permitted to intervene and filed a petition. E. W. Snead, as Receiver for the First Bank of Moore Haven, filed an answer without permission so far as the record discloses. All this was done April 3, 1923, between which date and May 10th apparently the testimony was taken.

Third, The Court found that the agreement between Stevenson and Treadwell and Treadwell, his attorneys who represented him in the action in which the judgment was obtained, provided that the firm should receive as compensaiton for their services "25% of the total amount which the said D. W. Stevenson should recover in said action, which the court finds from the testimony to be a reasonable compensation to be allowed said attorneys for their services in said cause and for which amount they are entitled to a lien prior to any other lien."

Fourth, The court found that the agreement between Stevenson and Treadwell and Treadwell authorized the lat-

ter to employ additional counsel. That E. J. L'Engle was employed; that $2,000.00 remained due to him for his services, which the court found to be reasonable, and to constitute a "lien prior to all except that of Treadwell and Treadwell."

Fifth, The court found that on the 23rd day of February, 1921, Stevenson assigned the judgment obtained by him to Marian N. O'Brien for the purpose of securing an indebtedness to her of $6,000.00, of which $500.00 had been paid. That she was entitled to recover $5,500.00, with interest from February 23, 1921, at 8% per annum, and that she was entitled to a "lien against the said money in the registry of the court prior to all others except the lien of Treadwell and Treadwell and that of E. J. L'Engle."

The pleadings and the evidence show that the assignment of the judgment upon the face of the instrument was absolute. That the subsequent assignment of the judgment to Treadwell and Treadwell referred to the O'Brien assignment as made to secure the indebtedness to her and the Bank of Moore Haven. The bill of complaint, answer of Stevenson and Mrs. O'Brien and the testimony of both these defendants tend to establish this fact.

Sixth, The court found that the First Bank of Moore Haven had not established to the satisfaction of the court that the assignment of the judgment was made for the benefit of the Bank and that it could take nothing by its claim.

Seventh, As to the claim of the Jax Ice and Cold Storage Company the court found that the garnishment in that Company's behalf was ineffective because at the time the writ was served upon the South Florida Farms Company the "judgment recovered by D. W. Stevenson against the South Florida Farms Company was pending and undetermined in the Supreme Court" and that the cause was not finally determined by the Supreme Court "until the conditions of the mandate were complied with." The court con-

cluded that no debt was in existence from the South Florida Farms Company to D. W. Stevenson as ''would be subject to a writ of garnishment.'' The court held that ''no lien attached to the said money derived from the said judgment.''

Eighth, As to the garnishment proceedings instituted by the Security Bank of Fort Ogden, the court held that the writ was served August 20, 1922; that the mandate from the Supreme Court in the Stevenson case had been filed in the Circuit Court and the conditions of the mandate had been complied with. The court found that by reason of the judgment obtained by the Bank against Stevenson on December 8, 1922, and the writ of ''garnishment, based thereon,'' the Bank had a ''lien for the amount of the judgment prior to all others except the lien of Treadwell and Treadwell, attorneys, and that of E. J. L'Engle and that of Marian N. O'Brien and is entitled to have same paid out of the said money in the registry of the court.''

Ninth, The court found that neither of the defendants, Jones Packing Company, H. C. Schrader Company, H. L. Davis or Wilson & Toomer Fertilizer Company had obtained writs of garnishment and that ''therefore no lien attached to the said money.''

After reciting the facts found by the court the decree proceeds to direct that out of the ''money remaining in the registry of the court after payment of cost awarded in Interpleader decree, to-wit: $26263.00 the cost of this case in the sum of $249.97'' shall be paid.

It appears that between the payment into the registry of the court, about October 19, 1922, of $28,285.10 and the date of the final decree, May 10, 1923, about $2,022.10 had been expended to which expenditure was to be added the further sum of $249.97, leaving a balance of $26,013.03.

It was decreed that Treadwell and Treadwell should be paid $7,071.27 and E. J. L'Engle should be paid $2,000.00;

that Marian N. O'Brien should be paid $6,471.67, and the balance remaining in the registry of the court "to-wit $10470.09" should be paid to the Security Bank of Fort Ogden. That the Jax Ice & Cold Storage Company, Jones Packing Company, H. C. Schrader Company, H. L. Davis and Wilson & Toomer Fertilizer Company should take nothing.

On June 5, 1923, the defendants appealed from that decree.

The third assignment of error attacks the order overruling the demurrer of the Jax Ice and Cold Storage Company to the bill of interpleader. If the demurrer was well taken and no basis existed in equity for the bill of interpleader the demurrer should have been sustained and all proceedings upon the bill, including the order of October 19, 1922, were invalid and of no force and effect.

The remedy by interpleader is an equitable one and is based upon the theory that conflicting claimants should litigate their claims among themselves without involving the stakeholder in their disputes. Its office is to protect one against the embarrassment of conflicting claims and double vexation in respect to one's liability. See Lowry v. Downing Mfg. Co., 73 Fla. 535, 74 South. Rep. 525; Fogg v. Goods, 78 Fla. 138; 82 South. Rep. 614.

As said by this Court in the case of Fogg v. Goode, *supra;* the stakeholder's right to interpleader is subject to the highly technical requirement that the opposing claimants' titles must be in privity with each other; one derived from the other or both derived from a common source. Their claims must be by different or separate interests but where their rights are asserted under adverse titles and are of different natures the bill cannot be maintained.

The complainant cannot cast upon the claimants the burden of settling the question of whether the complainant has obligated himself to one of the parties. The complain-

ant is supposed to know whether or not he has. The complainant must also be indifferent between the claimants and without interest in the controversy and should not by any act on his part have caused the embarrassment of conflicting claims and the peril of double vexation.

This case is not one in the nature of interpleader as distinguished from interpleader proper because the complainant disclaims any interest in the so-called fund in its possession and no equitable ground of jurisdiction is claimed other than the mere right to compel the defendants to interplead.

In the case at bar the debt of the complainant to Stevenson became merged into a judgment on February 4, 1921. In August, 1922, it was affirmed for a smaller sum by this Court. A payment of the judgment to the sheriff in the event of execution issuing upon it would have discharged the complainant so far as the claims of Marian N. O'Brien and Treadwell and Treadwell under the assignments are concerned. The assignment of the judgment by Stevenson in no wise could embarrass the complainant or subject it to the hazard of another obligation on account of that judgment. Their claims were under Stevenson to the proceeds flowing from an enforcement of the judgment.

As to the garnishing creditors of Stevenson, the Jax Ice and Cold Storage Company and the Security Bank of Fort Ogden, assuming that a judgment may be garnished or that a judgment debtor to the debtor of the garnishing creditors, may be garnished, the complainant had only to answer truthfully such writs of garnishment to be fully protected from double liability. In each case its answer should have recited the facts. To the writ obtained by the Jax Ice and Cold Storage Company an answer that a judgment had been obtained, that it had been assigned, that a writ of error had been taken and was pending. To the writ obtained by the Bank an answer that a judgment had

been obtained and on writ of error was affirmed for a certain amount and the judgment had been assigned would have completely protected the complainant from any double liability or hazard on account of the judgment debts because the garnishing creditors, as such, would have been entitled to the proceeds, if entitled to anything, flowing from the enforcement of the judgment. The garnishment was no protection to the complainant against the enforcement of the judgment. But whether the one rule or the other obtains in this State it is unnecessary to decide in the present case; because, even if the judgment debtor is not protected by the garnishment, from being harassed by execution on the judgment, he is not without his remedy at law. All courts possess the inherent power to prevent abuse of their process. See Skipper v. Foster, 29 Ala. 330, 65 Am. Dec. 405.

He may obtain a stay of execution upon the garnished judgment. See Early v. Rogers, 16 How. 599, 14 L. Ed. 1074; Montgomery Gas Light Co. v. Merrick & Sons, 61 Ala. 534; McFadden v. O'Donnell, 18 Cal. 160; Belcher v. Grubb, 4 Del. 461; Blair v. Hilgedick, 45 Minn. 23; 47 N. W. Rep. 310.

Mr. Drake, in his work on Attachment, says that it has long been the doctrine in England and generally followed by the courts of this country that where one has been summoned as a garnishee, and the defendant in such proceedings, before judgment of condemnation of the debt, sues the garnishee for that debt the latter may plead the attachment in abatement but not in bar, until judgment be recovered against him. It is no case for an interpleader. See Drake on Attachment, Sec. 700; Blair v. Hilgedick, *supra*.

The complainant in this case had ample opportunity to protect itself against a double liability. When it was served with the writ of garnishment in the first case it was its duty to set up in an answer the facts as they existed. It

assumed, apparently, however, to deny the existence of any liability to Stevenson. It is in no position to complain of the embarrassment which was produced by its own course of action. The court will not relieve it from any danger of a double liability brought about by its own artifice or subtlety.

Since it denied the debt due to Stevenson, if it did so in fact, instead of setting up the facts as they existed in its answer in the garnishment proceedings, and thus subjected itself to the danger of a liability to the Jax Ice and Cold Storage Company on that issue, it must abide the result of its own course. The situation certainly affords no ground for relief in equity.

Upon a proper application seasonably made in a case like the present the court in which the judgment was obtained would, upon such terms as might protect the judgment creditor from loss due to a suspension of the execution, order it stayed to abide the result of the garnishment proceedings. Certainly no grounds exist for an interpleader and no reason exists for the allowance to the complainant of a large sum as attorneys' fees and costs to be paid out of the amount due upon the judgment upon its payment into court.

The alleged liens for services of Stevenson's attorneys in procuring the judgment, if they exist at all, constitute no basis for an interpleader because they afford no reason why the judgment should not be enforced by the judgment creditor, or his assigns, and if it is enforced and the debt paid the judgment debtor would be absolved from further liability on that account.

Appropriate proceedings may be taken to preserve such liens without subjecting the judgment debtor to double liability. If any lien upon the judgment exists under the circumstances of this case in favor of Treadwell and Treadwell it is an interest to the same extent as if the creditor

had assigned the judgment to them as security and the court in which the judgment was obtained may upon appropriate application to it order a disbursement of the proceeds realized upon the enforcement of the judgment. See 2 R. C. L. 1079; 6 Cyc. 850.

The demurrer of the Jax Ice and Cold Storage Company to the complainant's bill should have been sustained. Overruling the demurrer was error. So the decree of the Chancellor is reversed with directions to dismiss the bill.

Brown, C. J., and Strum, J., concur.

Whitfield, P. J., and Terrell and Buford, J. J., concur in the Opinion.